# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRUCE  TARVIN, Trustee,<br>MID CENTRAL OPERATING ENGINEERS<br>HEALTH AND WELFARE FUND, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:10-cv-01619-TWP-TAB |
| YORK CONSTRUCTION AND<br>EXCAVATION, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## ENTRY ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiffs', Bruce Tarvin ("Mr. Tarvin") and Mid Central Operating Engineers Health and Welfare Fund ("the Welfare Fund") (collectively, "Plaintiffs"), unopposed motion for summary judgment (Dkt. 26).  This action was brought against Defendant York Construction and Excavation, Inc. ("York"), to compel payment of delinquent fringe benefit contributions, interest, liquidated damages, and attorneys' fees pursuant to 29 U.S.C. § 1145, of the Employment Retirement Income Security Act (ERISA).  Plaintiffs also seek recovery on behalf of two additional funds, the Central Pension Fund of Operating Engineers and Participating Employers ("the Pension Fund") and the IUOE Local 103 Apprenticeship and Training Fund ("the Training Fund") (collectively with Plaintiff the Welfare Fund, "the Funds").  York has not responded to Plaintiffs' motion.  For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

# I. BACKGROUND

Mr. Tarvin is Trustee of the Welfare Fund, which is an employee welfare benefit plan as defined by ERISA. The Welfare Fund serves as a collection agent for the Pension Fund and Training Fund, which are also employee benefit plans as defined by ERISA. York is a party to and has agreed to abide by the terms of collective bargaining agreements ("the CBA") with the International Union of Operating Engineers, Local Union No. 103 ("Local 103") and Trust Agreements for the Funds. In the CBA, York agreed to make contributions in specified hourly amounts, and it has agreed to be bound to the Funds' Trust Agreements. The Trust Agreements require submission of monthly contributions for each hour worked by or paid to the employees covered by the terms of the CBA.

Plaintiffs allege York is delinquent in contributions owed to the Funds for the period of March 2009 through December 2010, and, allege that with limited exceptions, York did not submit monthly contribution reports to the Welfare Fund for this period. To determine the amount of contributions owed to the Funds, the Welfare Fund retained an outside public accounting firm to perform a payroll audit of York's records. The Welfare Fund requested records from York, but York did not provide all of the payroll records necessary to perform a standard payroll audit. Based on the records York did provide for 2009 and 2010, the auditor concluded that York owed the Welfare Fund $26,856.93; the Pension Fund $34,223.85; and the Training Fund $4,040.45. To reach those results, the auditor divided the gross annual wages paid to members of Local 103 employed by York by the hourly wage rate provided for in the CBA, to reach an estimated number of hours worked by employees. Then, these hours were multiplied by the hourly fringe benefit contribution rate for each of the Funds to arrive at the total estimated contributions owed. This method was set forth in the Trust Agreements. The

Welfare Fund notified York of the audit results, provided it with a copy of the audit, and gave York an opportunity to dispute the results.  Although York disputed the amounts in certain respects, York did not provide additional payroll records necessary to review the claims it contested.

The Trust Agreements permit the Funds to assess and collect liquidated damages up to 20% of the amount delinquent in addition to interest on unpaid contributions.  The Trust Agreements further permit the Funds to recover their attorneys' fees and expenses associated with collecting delinquencies.  It is the Funds' practice to assess liquidated damages in the amount of 15% of unpaid contributions and 9% simple interest annually on the unpaid contributions to the funds.  Therefore, the Funds seek the following amounts:  $9,162.12 in liquidated damages and $13,636.10 in interest.  Finally, the Funds seek the fees associated with the outside audit, $1,775.00, and reasonable attorneys' fees.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation

omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

**A.    York's Obligation and Failure to Pay Contributions to the Funds**

ERISA provides that, "Every employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145. The CBA in this case set forth that York must pay an hourly amount for each hour worked or paid for, and York agreed to be bound by the terms of the Trust Agreements. The Trust Agreements state that York must promptly furnish the Funds with the "names of its employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration for the Trust Fund and for no other purpose." Dkt. 26-6 at 2. It also requires that York make contributions under the CBA, and default of payments will be considered a breach of the CBA. Dkt. 26-6 at 1–2.

The Funds submit that this "is a simple case: an employer has failed and refused to make required contributions, or to make them in a timely fashion. The undisputed facts are with the Plaintiffs, and so is the law." Dkt. 27 at 5. York has not responded to Plaintiffs' motion for

4

summary judgment.  In this circuit, when a fund presents an employer with a payroll audit report that establishes an absence of company records contradicting the report, the burden is on the employer to establish a genuine issue of material fact barring summary judgment.  *Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 738–39 (7th Cir. 2004).  Specifically:

> [O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper. If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment. Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment.

*Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264–65 (7th Cir. 2003).  Here, York has not submitted any documents nor has it come forward with any evidence setting forth the hours worked by its employees that would contradict Plaintiffs' audit report.  There has been no attempt to explain why York's payments to the Funds could nonetheless be considered proper.  The Court finds that York is bound by the audit method set forth in the Trust Agreements, and used by Plaintiffs.  Therefore, there is no genuine issue of material fact of whether York failed to make required contributions to the Funds.  The Court grants summary judgment in favor of Plaintiffs and awards the amount of delinquent contributions requested.

**B.      Liquidated Damages, Interest, and Attorneys' Fees**

In actions to enforce § 1145 under ERISA, if a judgment is awarded in favor of a plan, the court shall award the plan the unpaid contributions, interest on the unpaid contributions, and the greater of interest on the unpaid contributions or liquidated damages not to exceed 20%, reasonable attorney's fees and costs, and other legal or equitable relief deemed appropriate.  29 U.S.C. § 1132(g)(2).  In this case, the Trust Agreements set forth a rate of 9% simple interest and

"all costs, audit expenses and attorneys' fees incurred." Dkt. 26-7 at 3. The Trust Agreements do not specify a percentage of liquidated damages, except to echo the statutory cap of 20%. Section 1132(g)(2) is "a penalty statute rather than a statute merely regulating contract damages." *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001). And the common law doctrine "making contract penalty clauses unenforceable to liquidated-damages provisions in ERISA plans" is not applicable to statutory penalties. *Id.* As the Seventh Circuit explained in *Gustafson*, ERISA plans are permitted "to choose between providing for liquidated damages and providing for double interest." *Id.* Here, the Trust Agreements did not specify an amount of liquidated damages, but the Funds, based on its practice, has set a 15% liquidated damages penalty. This choice is permitted under the statute.

Because the Court has granted summary judgment in favor of Plaintiffs, the Funds are entitled to liquidated damages of 15% of the unpaid contributions, or $9,162.12. Moreover, the Funds are entitled to interest set at 9% annually, which at the time of filing was $13,636.10. Finally, under the statute the Court is required to award reasonable attorneys' fees and costs. Plaintiffs are granted leave to establish their reasonable attorneys' fees and costs.

## IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for summary judgment (Dkt. 26) is **GRANTED**. Plaintiffs are awarded unpaid contributions to the Welfare Fund in the amount of $26,856.93; to the Pension Fund in the amount of $34,223.85; and to the Training Fund in the amount of $4,040.45. Plaintiffs are further awarded 15% liquidated damages on the unpaid contributions, in the amount of $9,162.12, and interest on the unpaid contributions at the rate of 9% annually. Plaintiffs are granted leave to establish reasonable attorneys' fees and costs,

including the cost of the audit.  Plaintiffs shall submit a proposed final judgment along with their fee petition.


SO ORDERED.


Date:      10/22/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana




DISTRIBUTION:

Bruce Noel Munson
bnmunson@aol.com

Frederick W. Dennerline, III
FILLENWARTH DENNERLINE GROTH & TOWE LLP
fdennerline@fdgtlaborlaw.com

Donald Fenton Kratz
KEOWN & KRATZ LLC
don.kratz@keownkratz.com